<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                                        :
PETER RODSAN, et al.,                   :
                                        :    Civil Action No. 10-1923 (MAS)
            Plaintiffs,                  :
                                        :
      v.                                 :    **OPINION**
                                        :
BOROUGH OF TENAFLY, et al.,              :
                                        :
            Defendants.                  :
_____:
```

**SHIPP, Michael A., United States Magistrate Judge**

        This matter comes before the Court by way of Defendants Borough of Tenafly (the

"Borough") and Frank J. Mottola, Jr.'s ("Mottola") motion to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") or, in the alternative, for summary judgment

pursuant to Federal Rule of Civil Procedure 56(b) ("Rule 56(b)").  (Docket Entry Number ("Doc.

No.")  26 ("Borough's Moving Br.").)   The Board of Adjustment of the Borough of Tenafly (the

"Board") and Benny Lorenzo ("Lorenzo") (the Borough, Mottola, Board and Lorenzo,

hereinafter, collectively referred to as "Defendants") similarly filed a motion for summary

judgment.  (Doc. No.  25 ("Bd.'s Moving Br.").)  Plaintiffs Peter Rodsan, Marta Gena Rodsan

and Jacob Rodsan ("Jacob") (collectively "Plaintiffs" or the "Rodsans") oppose both motions for

summary judgment (Doc. No. 32. ("Pls.' Opp'n Br."); Doc. No. 33 ("Pls.' 2d Opp'n Br.")),

while simultaneously filing a cross-motion for leave to amend the Complaint.  (Doc. No. 34

("Pls.' Moving Br.").)  The Board and Lorenzo oppose Plaintiffs' cross-motion.  (Doc. No. 38

("Bd.'s Opp'n Br.").)

Pursuant to Federal Rule of Civil Procedure 78(b), the Court shall decide the motion on the papers.  As such, Plaintiffs' request for oral argument is denied.  For the reasons set forth below, and for other good cause shown, Defendants' motions for summary judgment are **GRANTED**.  Plaintiffs' cross-motion for leave to amend the Complaint is **DENIED**.

## I.    <u>BACKGROUND</u>

Plaintiffs reside at 59 East Clinton Avenue in Tenafly, New Jersey, which is also known as Lot 17, Block 1709 on the Borough's tax map.  (Doc. No. 1 ("Compl.") 2, ¶ 2.)  Jacob Rodsan is physically disabled and, as such, the Rodsans' procured several variances that were approved by the Board, which permitted them to construct an addition and elevator to their house in order to accommodate Jacob's disability.  (*Id.* at 2, ¶¶ 4-5; Borough's Moving Br. 1; Pls.' Opp'n Br. 1.)  Mottola, the Borough's Zoning Official, however, denied the Rodsans' request to use their detached garage as a pool cabana, asserting that it was an accessory use that violated the Borough's Code.  (Compl. 2, ¶¶ 6-9; Borough's Moving Br. 1; Pls.' Opp'n Br. 1.)  Plaintiffs appealed Mottola's decision, while simultaneously filing for a variance, which the Board denied after conducting several hearings.  (Compl. 4, ¶¶ 2, 7-8.)

Plaintiffs subsequently filed a complaint in the Superior Court of New Jersey on December 10, 2008 against all Defendants except Lorenzo, the Board's Chairman, alleging that the Board's denial of Plaintiffs' request for a zoning variance was arbitrary and capricious, and that Defendants had engaged in discriminatory behavior towards Plaintiffs in violation of state and federal law.  (Borough's Moving Br. 2, 4.)  Specifically, the state Complaint included the following allegations:

> Defendants . . . cited Plaintiffs for numerous alleged [zoning code] violations as part of a plan and scheme to harass and discriminate against the Plaintiffs. . . .

> The conduct of the Defendants has been undertaken in violation of State and Federal law protecting the rights of handicapped individuals.
>
> The Defendants have engaged in a course of deliberate, harassing and discriminatory conduct against the Plaintiffs. . . .
>
> The . . . conduct of the Borough of Tenafly, Defendant Zoning Board of Adjustment and Mottola has been undertaken in violation of State Law, State and Federal Constitutions . . . .

(*Id.* at 4, quoting Doc. No. 26-4 ("Ritvo Cert.") Ex. A ("State Compl.") ¶¶ 10, 12-13.)  The Borough's and Mottola's answer and affirmative defenses to the state complaint expressly deny the aforementioned allegations and set forth the following affirmative defenses: (1) Plaintiffs' failure to state a cause of action upon which relief may be granted; (2) Plaintiffs' failure to comply with the New Jersey Tort Claims Act notice requirements; and (3) immunity pursuant to New Jersey law.  (Doc. No. 26-3 ("McClure Cert.") Ex. B ("Borough's Answers to State Compl.") 1-3.)  Notably, Plaintiffs' state complaint demands judgment declaring, in part, that the denial of Plaintiffs' variance application and the conduct of the Board, Borough and Mottola be declared "arbitrary, capricious and unreasonable, in violation of State Law and Federal Law and the State's and Federal Constitutions and should be set aside."  (State Compl. Wherefore Clause a.)

Significantly, counsel for Plaintiffs signed and dated a Stipulation of Dismissal of the Borough and Mottola without prejudice, which was dated February 27, 2009, and sent to the aforementioned parties on March 3, 2009.  (Doc. No. 29 ("Piekarsky Cert.") ¶ 2, Ex. A ("Stip.").)  The Stipulation of Dismissal was never signed by Defendants or entered by the lower court.  (*See id.*)  A case management conference was subsequently held on April 28, 2009, resulting in entry of a case management order, which includes Plaintiffs' allegations concerning violations of state and federal laws and the New Jersey and United States Constitutions in the "Statement of Action" section.  (McClure Cert. Ex. C ("Case Management Order") ¶ 2;

Piekarsky Cert. ¶ 4.)  Counsel for the Borough and Mottola did not appear at the conference.
(Piekarsky Cert. ¶ 4.)  Also, the Borough and Mottola did not submit a trial brief in preparation
for the trial proceedings.  (*Id.* at ¶ 5.)

On September 11, 2009, a one-day bench trial was held, and, while the Borough and
Mottola were dismissed, judgment on the claims filed against the Board was reserved.
(Borough's Moving Br. 2, 5; Ritvo Cert. Ex. B ("N.J. Super. Opinion") 2, Ex. C ("Order for
Judgment") 1.)  After a full trial, on October 27, 2009, the Superior Court entered an Order for
Judgment, confirming that all claims against the Borough and Mottola were dismissed at the time
of the hearing and dismissing all claims asserted against the Board with prejudice.  (Borough's
Moving Br. 2; Order for Judgment 1-2.)  Plaintiffs appealed the decision to the New Jersey
Appellate Division, which was denied on July 12, 2010.  (Borough's Moving Br. 2-3; Ritvo Cert.
Ex. F. ("N.J. App. Div. Opinion").)  In describing the underlying action, the Appellate Division
noted that the lower court "dismissed plaintiff's complaint with prejudice and without costs."
(N.J. App. Div. Opinion 7.)  Similarly, on October 7, 2010, Plaintiffs' petition for certification to
the Supreme Court of New Jersey was denied.  (Borough's Moving Br. 3; Ritvo Cert. Ex. G
("Order on Pet. for Cert.").)

After the New Jersey Supreme Court denied certification, on April 15, 2010, Plaintiffs filed
a Complaint in this Court, which alleges the following: (1) constructive seizure of Plaintiffs'
property without compensation in violation of 42 U.S.C. § 1983; (2) violation of the equal
protection clause of the Fourteenth Amendment of the United States Constitution; (3) violation of
the due process clause of the Fourteenth Amendment of the United States Constitution; (4)
unlawful discrimination amounting to conspiracy to interfere with civil rights and equal protection
in violation of 42 U.S.C. § 1985; (5) neglecting to prevent violations of 42 U.S.C. § 1983; (6)

4

seizure of property without just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution; (7) violation of procedural due process under the Constitution of the State of New Jersey; (8) unlawful discrimination in violation of N.J. Stat. Ann. §§ 10:5-12.5. (*See generally* Compl.)  Additionally, Plaintiffs' proposed amended Complaint seeks to add a ninth cause of action for selective enforcement in violation of 42 U.S.C. § 1983.  (*See* Doc. No. 34-2 ("Proposed Amend. Compl."); Pls.' Opp'n Br. 2.)

## II.   <u>DISCUSSION</u>

### A.   <u>Defendants' Motion for 12(b)(6) Dismissal or, in the Alternative, for Summary Judgment</u>

Defendants seek the dismissal of Plaintiffs' Complaint in its entirety pursuant to Rule 12(b)(6).  In the alternative, Defendants seek an award of summary judgment pursuant to Rule 56(b).

#### 1.   *<u>Relevant Legal Standards</u>*

##### a.   *<u>Rule 12(b)(6) Dismissal Standard</u>*

As a defense, a party may move to dismiss a complaint by asserting the non-moving party's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). However, when a responsive pleading is required, such as an answer to a complaint, any motion asserting such a defense must be made prior to filing an answer or other response.  *See id.* Moreover, if, in deciding a Rule 12(b)(6) motion to dismiss, a court is inclined to review and consider evidence beyond the initial pleadings, the motion is converted into a summary judgment motion and the Federal Rule of Civil Procedure 56(c) legal standard applies.

Based on the aforementioned, the Court finds that Defendants' motion to dismiss pursuant to Rule 12(b)(6) is untimely and/or must be converted into a summary judgment motion.

### b.   *Summary Judgment Standard*

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if there is sufficient evidentiary support such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). Disputes over irrelevant or unnecessary facts will not preclude a court from granting summary judgment.

The party moving for summary judgment has the initial burden of proving an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). If the non-moving party bears the burden of proof at trial, the movant may discharge its burden by pointing to an absence of evidence necessary to support the non-movant's claim. *Id.* at 325. Alternatively, a moving party may submit affirmative evidence that negates a material element of the non-moving party's claim. *Id.* If the movant brings such affirmative evidence, or makes a showing that the non-movant lacks evidence essential to its claim, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The burden of persuasion, however, rests ultimately on the non-moving party to establish each element necessary to succeed on the claims on which it bears the burden of proof at trial. *Celotex*, 477 U.S. at 322.

To decide whether a genuine issue of material fact exists, the Court must consider all facts, drawing all reasonable inferences in a light most favorable to the non-moving party. *Kaucher*, 455 F.3d at 423. However, on a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether

there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  Absent a genuine issue for trial, summary judgment as a matter of law is proper.

### c.    *Full Faith and Credit Statute*

Under the federal Full Faith and Credit Statute, 28 U.S.C. Section 1738, records and/or judicial proceedings in any state court, if properly authenticated, "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."  Accordingly, when considering the preclusive effect that a state judgment may have on a federal matter, the court must consider the Full Faith and Credit Statute and the rulings of the relevant state court.  *Dowdell v. Univ. of Med. & Dentistry of N.J.*, 94 F. Supp. 2d 527, 533 (D.N.J. 2000).  More specifically, when assessing the effect that a state judgment has on a federal proceeding, "[f]ederal courts may not employ their own rules . . . in determining the effect of state judgments, but must accept the rules chosen by the State from which the judgment is taken."  *Id.* (omitting quotation and citation).  Here, in order to consider the preclusive effect of the underlying state court judgment, if any, the Court must consider and assess the applicable New Jersey law.

Significantly, pursuant to New Jersey law, a claim is considered to have been litigated if it was properly raised in the pleadings or other court filings.  *Velasquez v. Franz*, 123 N.J. 498, 506-07 (1991) ("claims that are actually litigated and determined before trial also are barred from being relitigated," even if the judgment does not "pass directly on the substance of a claim." (internal citation omitted)).   Further, "[a] dismissal with prejudice 'constitutes an adjudication on the merits as fully and completely as if the order had been entered after a trial.'" *Dowdell*, 94 F. Supp. 2d at 533 (citation omitted).  Also, whether a claim is precluded is premised upon the judgment and not "the underlying rationale of the decision . . . ."  *Id.*

7

Finally, it is important to note that when considering whether a claim is precluded pursuant to the Full Faith and Credit Statute, this Court has held that the same rules applied to general civil claims are also applicable to Section 1983 civil rights claims. *Heir v. Del. River Port Auth.*, 218 F. Supp. 2d 627, 632 (D.N.J. 2002) (where a full condemnation award was granted in a state proceeding and was not appealed, finding that any Fifth Amendment takings claim in federal court was precluded under New Jersey's entire controversy doctrine); *Rhodes v. Twp. of Saddle Brook*, 980 F. Supp. 777, 781 (D.N.J. 1997) (precluding plaintiffs' federal counterclaim of civil rights violations under the entire controversy doctrine, because the state court proceedings dealt with the constitutionality of a city ordinance and plaintiffs, although having had a fair opportunity to raise such a counterclaim, failed to assert same).

### d.       *Res Judicata/Claim Preclusion/Issue Preclusion*

The *res judicata* doctrine "contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation." *Culver v. Ins. Co. of N. Am.*, 115 N.J. 451, 460 (1989) (quotation and citation omitted). "Where the second action is no more than a repetition of the first, the first lawsuit stands as a barrier to the second. The rule precludes parties from relitigating substantially the same cause of action." *Id.* (quotation and citation omitted). Stated differently, *res judicata* is "the general notion that a prior lawsuit has a preclusive effect in a future action between the parties who litigated the prior case . . . ." *Peduto v. City of N. Wildwood*, 696 F. Supp. 1004, 1006 (D.N.J. 1988) (finding that the doctrines of *res judicata* and preclusion barred plaintiffs' federal takings and due process claims, because the state court decided constitutional issues related to the sewer moratorium and construction ban in dispute and relitigation of same would be contrary to law); *see Ward v. Vill. of Ridgewood*, 531 F. Supp. 470, 475 (D.N.J. 1982) (where a party claimed a deprivation of property rights resulting

from the denial of an application to develop his property, holding, "the first judgment precludes the assertion of a § 1983 claim in a later suit . . . .").

Importantly, much like the Full Faith and Credit Statute, a court examining a preclusion issue must apply the preclusion law of the jurisdiction from which the original claim was heard. *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999); *Tancrel v. Mayor of Twp. of Bloomfield*, 583 F. Supp. 1548, 1551 (D.N.J. 1984) ("The question, then, is whether plaintiff could have raised his federal claims in the state action, and whether state claim preclusion doctrines would now bar him from raising those claims in the state court."). The doctrine of claim preclusion disallows a second court from considering claims or matters that should have been litigated in an underlying action, while also serving to prohibit the second court's consideration of "matters stemming from the same claim[s] that have been litigated." *Peduto*, 696 F. Supp. at 1007 (citation omitted). Issue preclusion, "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel." *Id.* (citation omitted). Notably, issue preclusion and collateral estoppel fall under the umbrella of *res judicata*. *Dowdell*, 94 F. Supp. 2d at 535 n.7. Indeed, collateral estoppel, or "[i]ssue preclusion requires a similar, yet less demanding, analysis than *res judicata* or claim preclusion." *First Union Nat. Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 352 (2007). Under issue preclusion, "the relitigation of issues actually adjudicated, and essential to the judgment in a prior litigation between the same parties" is barred. *Peduto*, 696 F. Supp. at 1007.

Regarding claim preclusion, New Jersey imposes a three-prong test to determine the applicability of the doctrine:

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

*Sutton v. Sutton*, 71 F. Supp. 2d 383, 390 (D.N.J. 1999) (quotation and citation omitted) (barring a plaintiff's federal claims regarding an estate, because although reframed as federal questions, they could and should have been brought in the state proceedings, which dealt with plaintiff's initial complaint against the settlement and accounting of the same estate); *see also Dowdell*, 94 F. Supp. 2d at 536; *Peduto*, 696 F. Supp. at 1004-08.

With regard to whether an action involves the same parties or persons in privity with the same parties in the prior action, the word "privity" requires demonstration that the relationship between a named party and another person or entity is "close enough" to include the latter for preclusion purposes. *Zirger v. Gen. Accident Ins. Co.*, 144 N.J. 327, 338 (N.J. 1996) (quoting *Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir. 1950) (Goodrich, J., concurring)). "A relationship is usually considered 'close enough' only when the party is a virtual representative of the non-party, or when the non-party actually controls the litigation." *Id*. (quoting *Collins v. E.I. DuPont de Nemours & Co.*, 34 F.3d 172, 176 (3d Cir. 1994) (applying New Jersey law)).

Further, the determination of whether a subsequent suit is based on the same overall transaction that was the basis for a prior proceeding, "turn[s] on the essential similarity of the underlying events giving rise to the various legal claims." *Dowdell*, 94 F. Supp. 2d at 536 (quoting *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999)). Specifically, it requires a determination on the following:

> "whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same." . . . The fact that "the acts complained

of [are] the same and that the evidence at [a federal] trial would [be] the same" necessitate a finding that this action and the state action are identical.

*Id.* at 540 (quoting *United States v. Athlone Indus.*, 746 F.2d 977, 984 (3d Cir. 1984) and *Churchill*, 183 F.3d at 195) (precluding a plaintiff's Title VII claims because the federal claims derived from the same allegations and facts relied upon during the state action and, as such, the NJLAD and Title VII claims could and should have been consolidated in the state action. Plaintiff's "failure to pursue his federal claims diligently and the mandates of the doctrine of claim preclusion require this Court to dismiss each of Dowdell's remaining Title VII claims.").

### e.    *Entire Controversy Doctrine*

The entire controversy doctrine is an equitable remedy, which "application is left to judicial discretion based on the particular circumstances inherent in a given case." *Rhodes*, 980 F. Supp. at 783 (quotation and citation omitted). Under the doctrine, a party "who fails to allow the trial court the opportunity to supervise the entire controversy risks losing the right to bring that claim later." *Id.* (quotation and citation omitted). As previously recognized by this Court, the underlying purposes of the entire controversy doctrine under New Jersey law include: "(1) avoidance of piecemeal litigation through complete consideration of interrelated claims; (2) fairness to the parties in the action as well as to those possessing a material interest in its outcome; and (3) efficiency and economy." *Dowdell*, 94 F. Supp. 2d at 534 (citations omitted). When considering fairness to the parties, "a court must consider whether the claimant had a 'fair and reasonable opportunity to have fully litigated the claim in the original action.'" *Heir*, 218 F. Supp. 2d at 633 (citation omitted).

Significantly, the underlying premise of the entire controversy doctrine is that "the court must dismiss a claim that was or could have been raised previously as precluded." *Robertson v.*

11

*Bartels*, 148 F. Supp. 2d 443, 448 (D.N.J. 2001); *Tancrel*, 583 F. Supp. at 1551 (barring civil rights claims under the New Jersey entire controversy doctrine and claim preclusion, because the claims could have been simultaneously asserted in the initial action and plaintiff, thus, had a full and fair opportunity to pursue other claims than those asserted).  Whether a claim should have been included in a prior action is dependent upon when the claim accrued, which is determined by considering "when a plaintiff knows or should know of the facts underlying his claim, not when he understands the legal consequences of those facts."  *Rhodes*, 980 F. Supp. at 787. Notably, where a party could or should have raised claims in an original state action, this Court must apply the entire controversy doctrine to assess whether the claims must be barred, "even when the withheld component is a separate and independently cognizable cause of action." *Dowdell*, 94 F. Supp. 2d at 534 (quoting *Paramount Aviation Corp.*, 178 F.3d at 137); *Heir*, 218 F. Supp. 2d at 633-34 (pursuant to the Full Faith and Credit Statute, federal courts must apply the entire controversy doctrine if the claims should have been pursued during the state proceedings).

Notably, the doctrine is divided into two separate aspects: (1) claims joinder and (2) party joinder.  *Rhodes*, 980 F. Supp. at 781.  Under the claims joinder aspect of the doctrine, a party is required to "present all affirmative claims and defenses arising out of a controversy."  *Id.* (citation omitted).  Stated differently, the doctrine requires the joinder of all claims that arise from a larger, single transaction that is the underlying dispute in a lawsuit.  *Dowdell*, 94 F. Supp. 2d at 535 (citing *DiTrolio v. Antiles*, 142 N.J. 253, 271 (1995)).  A "commonality of legal issues" is not necessary for the doctrine to apply, but "[r]ather, the determinative consideration is whether distinct claims are aspects of a single larger controversy because they arise from interrelated facts."  *Id.*  Regarding the party joinder aspect, there is a "mandatory joinder of all

parties with a material interest in a controversy." *Rhodes*, 980 F. Supp. at 781.  This aspect is

necessary, because:

> the commonality of purposes in both the party joinder and claims-joinder rules
> indicates that they are conceptual subsets of the entire controversy doctrine.
> Thus, to the extent possible courts must determine an entire controversy in a
> single judicial proceeding and that such a determination necessarily embraces not
> only joinder of related claims between the parties but also joinder of all persons
> who have a material interest in the controversy.

*Id.* at 782 (quotation and citation omitted).  Whether a person or entity has a material interest is

dependent on whether that person or entity "can affect or be affected by the judicial outcome of a

legal controversy." *Id.*

Finally, "it should be noted that the New Jersey entire controversy doctrine, as an

'application of traditional *res judicata* principles . . . [and] an aspect of the substantive law of New

Jersey,' requires this Court to enforce the doctrine in hearing a federal claim as well." *Dowdell*, 94

F. Supp. 2d. at 535 (quoting *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 887 (3d Cir.

1997).  The doctrine, however, does not bar claims that are "unknown, unarisen, or unaccrued at

the time of the original action." *Murray v. Crystex Composites LLC*, 618 F. Supp. 2d 352, 358

(D.N.J. 2009) (citation omitted).  Likewise, a court may refrain from applying the doctrine if

invoking it "would result in significant unfairness or jeopardy to a clear presentation of the issues

and just result." *Rhodes*, 980 F. Supp. at 783 (quotation and citation omitted).

### 2.      *Parties' Legal Arguments*

Here, Defendants assert that the prior judgment of the state trial court precludes Plaintiffs

from bringing their claims, because the claims arise out of the same set of facts that were

litigated in the state trial court proceedings.  (Bd.'s Moving Br. at 7-8; Borough's Moving Br. at

9-11.)  More specifically, Borough and Mottola assert that Plaintiffs' claims are barred under the

Full Faith and Credit Statute and the doctrines of claim preclusion and *res judicata*, because the state court dismissed the claims asserted against them at the very outset of the trial proceedings. (Borough's Moving Br. 8, 10-11.)  Since the "dismissal was not expressly done 'without prejudice,'" Borough and Mottola argue that the underlying reasons for the dismissal are not relevant and that the dismissal was granted on the merits.  (*Id.*)  Further, with the exception of Lorenzo, the parties in this matter are identical to those in the state action.  (*Id.* at 10.)  The Borough and Mottola assert that Lorenzo is an "immaterial exception," as he was the Board Chairman during the hearing on the Rodsans' variance application.  (*Id.*)  Accordingly, the Borough and Mottola assert that, because the same claims were asserted in state court, Plaintiffs' claims in this federal action must be barred, as they "had their day in state court . . . a venue in which they, themselves, chose."  (*Id.* at 10-11.)

Finally, regarding the Sixth and Eighth Counts in Plaintiffs' Complaint, the Borough and Mottola contend that the claims are precluded by the entire controversy doctrine.  (*Id.* at 12.)  The Sixth Count claims that Defendants unlawfully seized the property without just compensation and the Eighth Count alleges violation of the New Jersey Law Against Discrimination.  (*Id.*)  Because the aforementioned claims "unquestionably arise out of the very same operative facts upon which the plaintiffs based their other claims in the state court proceeding," the Borough and Mottola argue, the claims must be barred under the entire controversy doctrine, as such claims should have been pursued in the state action.  (*Id.*)

Similarly, the Board and Lorenzo argue that Plaintiffs' claims are barred by the entire controversy, *res judicata*, claim and issue preclusion and collateral estoppel doctrines, asserting that "all issues set forth before this Court were briefed, tried and mentioned at the trial court level, at the appellate level and raised again by Plaintiffs at the Supreme Court level."  (Bd.'s

Moving Br. 2, 5.)  Specifically, the Board and Lorenzo assert that Counts 2, 3, and 8 were

litigated in state court and, as such, are barred by the entire controversy doctrine and claim

preclusion.  (*Id.* at 6.)  Regarding Counts 1, 4, 5, 6, and 7, they argue that the claims are barred

by the doctrines of *res judicata*, collateral estoppel and issue preclusion.[1]  (*Id.*)  Also, any claims

alleging discrimination as a result of Defendants' failure to advise Mr. Rodsan about the site

inspection, the Board and Lorenzo argue, were raised and addressed in the proceedings below

and, as such, must be precluded.  (*Id.* at 10.)

       Finally, the Board and Lorenzo argue that because Plaintiffs, in their initial appeal to

Mottola's denial, failed to argue "extreme" and financial hardship if required to convert the

structure back to its traditional use of a garage, any claim related to such assertions must be

precluded as Plaintiffs failed to exhaust their administrative remedies on this issue.  (*Id.* at 9.)

The Board and Lorenzo explain that there are no supporting facts on the record that the

Defendants ever requested that the ramp required modification and, because such issues should

have been previously raised, they are now precluded.  (*Id.*)

       Plaintiffs vehemently disagree with Defendants' arguments, countering that the only

claim fully adjudicated in the prior litigation was whether the Board's denial of the zoning

variance was proper, based on an "arbitrary, unreasonable and capricious standard."  (Pls.'

Opp'n Br. 2, 6-7.)  "The discrimination, civil rights and selective enforcement claims need to be

---

[1]  While counsel for the Board and Lorenzo initially assert that Counts 2, 3, and 8 were litigated
in state court, later in the brief the contention is changed to assert that Counts 1, 2, 3, 4, 5, 6, and
8 were actually litigated and decided below and Counts 1, 4, and 5 could have or should have
been brought forth in the state proceedings but were not.  (Bd.'s Moving Br. 8.)  To add further
confusion, counsel concludes that Counts 1, 4, 5, 6, and 7 could have been brought in the state
proceedings but were not.  (*Id.*)  Thus, it is unclear what assertions counsel is making with regard
to what claims were in fact litigated versus those claims that should have been included and are,
therefore, precluded.  Regardless, the Court will address all asserted claims in its analysis below.

litigated under a *de novo* 'preponderance of the evidence' standard with all Defendants

involved." (*Id.* at 2.)  Plaintiffs state that because the Board was the only Defendant involved in

the trial, Plaintiffs have not had the chance to press their claims against the remaining

Defendants.  (*Id.* at 7.)  Plaintiffs conclude that they have not had their day in court for these civil

rights issues, and that even if the trial court had reached the civil rights issues, the standard of

review used by the trial court would have been inappropriate.  (*Id.*)

       Plaintiffs further contend that Defendants' description of their dismissal in the state

proceeding is misleading, because the parties stipulated to dismissing the Borough and Mottola

without prejudice on or about February 27, 2009.  (*Id.* at 3.)  "For an unknown reason, a formal

Stipulation was never executed and filed," but, according to Plaintiffs, Defendants were aware

that the dismissal was without prejudice.  (*Id.*)  Likewise, Plaintiffs contend that although true

that their state trial brief did not include arguments concerning the civil rights and discrimination

claims, the dismissal was not related to the trial brief and "nothing in the record [exists] to

suggest or prove" otherwise.  (*Id.*)  According to Plaintiffs, the record of the state proceedings

supports their assertion that Defendants were aware of their voluntary dismissal without

prejudice as early as April 2009, when the lower court entered a Case Management Order that

did not list any of the Defendants, except the Board, as parties to the action.  (*Id.*)  Plaintiffs

support this contention by highlighting the following testimony made on the record during the

prerogative writ hearing:

> Mr. Piekarsky: [I] don't think we need Mr. McClure here.  I thought my associate
> had stip'd him out and stip'd the town out on the prerogative writ matter.  This
> was a discussion Mr. McClure and I [had] some time ago.  So for purposes of
> prerogative – this prerogative writ matter, I don't need him and his clients in this
> case, and I dismiss them on **this case.**

(*Id.* at 3-4, quoting Piekarsky Cert., Ex. B (emphasis in Pls.' Opp'n Br.).)  Plaintiffs contend that

16

Mr. McClure must have agreed, because he left the hearing thereafter.  Thus, Plaintiffs argue, the court officially dismissed Borough and Mottola based on counsel's representation that they had been voluntarily dismissed long ago, based on the stipulation that expressly stated that dismissal was "without prejudice."  (Pierkarsky Cert. ¶¶ 2-7.)

Regarding Defendants' Full Faith and Credit Statute, claim preclusion and *res judicata* arguments, Plaintiffs assert that the doctrines are inapplicable and do not preclude Plaintiffs' claims.  (Pls.' Opp'n Br. 5.)  First, Plaintiffs argue, although Defendants were not officially dismissed until the day of the prerogative writ hearing, all Defendants except the Board "were dismissed without prejudice from the state matter almost six months before the hearing."  (*Id.*)  Plaintiffs assert this proposition by referring to the February 27, 2009 stipulation that expressly dismissed the Borough and Mottola "without prejudice," coupled with the fact that their attorney was not present at the April 28, 2009 Case Management Conference, which specifically related to the briefing schedule for trial briefs and the commencement date of the trial.  (*Id.*)  Finally, the September 11, 2009 hearing, according to Plaintiffs, only involved the Board, and, as such, the decision does not address the Borough's or Mottola's legal arguments.  (*Id.*)  In fact, Plaintiffs argue, counsel for the Borough and Mottola admitted that his "clients were <u>not</u> <u>parties</u> to the action at the time of the entry of judgment . . . ."  (*Id.*, quoting Piekarsky Cert., Ex. C (emphasis added by Plaintiffs).)

As such, Plaintiffs assert that it was clear to the Borough and Mottola that, long before the hearing, their dismissal was without prejudice.  (*Id.*)  Plaintiffs, therefore, take the position that the Full Faith and Credit Statute is inapplicable, because a judgment on the merits in favor of the Borough and/or Mottola was never entered.  (*Id.*)  As the parties disagree on the

characterization of the facts leading up to the dismissal of the Borough or Mottola, Defendants'

summary judgment motions, Plaintiffs contend, must be denied.  (*Id.* at 5-6.)  Plaintiffs explain:

> There is a lack of any evidence in the record to suggest either the moving
> Defendants were dismissed with prejudice by the Court or evidence to suggest the
> state court judgment was entered in favor of the moving defendants.  Furthermore,
> common sense dictates that judgment cannot be entered against
> individuals/entities not parties to an action.  Metaphysical doubt is the only
> avenue the moving Defendants have to support their allegations.

(*Id.* at 6.)

Similarly, Plaintiffs contend that the doctrines of *res judicata* and/or the entire

controversy doctrine are equally inapplicable in this matter.  (*Id.*)  Regarding *res judicata*,

Plaintiffs assert that because the hearing pertained to whether the Board's decision was arbitrary,

unreasonable and capricious, the Court never reached the discrimination, civil rights or selective

enforcement claims.  (*Id.* at 6-7.)   As such, Plaintiffs argue that they "did not have a full and fair

opportunity to litigate the civil rights and discrimination claims based on a fair standard that

reviews all the evidence de novo and without giving deference to an agency's decision, which

may have been based on improper motives."  (*Id.*)

Finally, with regard to the Board and Lorenzo's motion for summary judgment, Plaintiffs

largely adopt the arguments set forth in their opposition to the Borough and Mottola's motion,

asserting that the Defendants' arguments are substantially similar.  (Pls.' 2d Opp'n Br. 1.)

Regarding the assertion that Defendants never held that an alteration to the ramp was necessary,

however, Plaintiffs express disconcert, because the Board approved the ramp in March 2008 and,

six months later, "in essence, told Plaintiffs [to] get rid of the ramp, knowing that it is the sole

means of egress and ingress into their home for their disabled son.  The denial of the variance

application in 2008 effectively meant that the ramp would have to be removed."  (*Id.* at 1-2.)

Accordingly, Plaintiffs assert that they did, in fact, exhaust their administrative remedies. (*Id.* at 2.) Plaintiffs conclude that granting summary judgment would be inappropriate, as there are genuine issues of material fact regarding whether Plaintiffs had a full and fair opportunity to litigate their claims. (*Id.*) This is particularly true, Plaintiffs contend, when considering the use of an "arbitrary, unreasonable, capricious" standard coupled with the new evidence Plaintiffs discovered after the prerogative writ matter. (*Id.*)

Counsel, Mr. McClure, who represents the Borough and Mottola, however, strongly objects to Plaintiffs' characterization of the dismissal of the Borough and Mottola. (Doc. No. 36 ("McClure Reply Cert.") ¶ 2.) Regarding the unsigned proposed stipulation dismissing the Borough and Mottola without prejudice, counsel certifies that he telephonically advised Plaintiffs' counsel that he could not agree to a dismissal without prejudice, which was contemporaneously included in counsel's time and billing records. (*Id.* at ¶¶ 3-4, Ex. A ("5/29/09 Invoice") (entry on April 9, 2009, indicating that counsel advised Plaintiffs' counsel, Mr. Piekarsky, that the Borough and Mottola could "not agree to a dismissal 'without prejudice'").) This, according to Mr. McClure, explains why only Plaintiffs' counsel appears on the proposed stipulation. (*Id.* at ¶ 3.) Mr. McClure explains that he would have never agreed to dismiss his clients without prejudice, because Plaintiffs failed to serve the Borough with a "Notice of Tort Claim," which is a procedural defect that precludes such a claim. (*Id.* at ¶ 5.) Accordingly, counsel asserts that "[i]t would make absolutely no sense for the Borough to agree to a dismissal 'without prejudice' so as to allow the plaintiffs to cure their fatal failure to serve a Notice of Tort claim." (*Id.*)

Counsel for the Borough and Mottola further clarifies that the reason he did not attend the case management conference was not because he believed his clients had been dismissed, but

19

rather, he had a trial in a different matter scheduled on the same day the conference was initially scheduled.  (*Id.* at ¶ 6.)  While the conference was rescheduled to April 28, 2009, Mr. McClure was unaware of the change in schedule, thereby explaining his absence.  (*Id.* at ¶ 7.)  Next, regarding the Borough and Mottola's failure to file a trial brief, Mr. McClure explains that this was a result of the trial court previously ordering "that any claims not addressed in the plaintiffs' trial brief would be deemed abandoned."  (*Id.* at ¶ 8.)  Since Plaintiffs' trial brief failed to address their claims against the Borough or Mottola, there was no need to submit a brief on behalf of the aforementioned Defendants.  (*Id.* at ¶ 9.)  Finally, Mr. McClure argues that he appeared at the September 11, 2009 trial because his clients remained parties to the litigation. (*Id.* at ¶ 10.)  Once the court dismissed the claims against the Borough and Mottola, "without any stipulation that the dismissal was to be 'without prejudice,'" Mr. McClure left, and a judgment disposing of the entire matter "<u>with prejudice</u>" was subsequently entered.  (*Id.* (emphasis in McClure Reply Cert.).)

Similarly, the Board and Lorenzo vehemently oppose Plaintiffs' opposition to their motion, citing to various facts set forth in the state court pleadings.  (Doc. No. 35 ("Bd.'s Reply Br.") 1-3.)  Because a judgment was entered in favor of Defendants in the state proceeding, and the claims set forth in the state complaint were litigated and decided, the Board and Lorenzo assert that Plaintiffs' Complaint must be precluded, because this federal matter is premised upon the same factual allegations set forth in those underlying proceedings.  (*Id.* at 3.)  As for Plaintiffs' assertion that they exhausted their administrative remedies regarding their claim pertaining to the ramp, the Board and Lorenzo again disagree.  (*Id.* at 3-4.)  According to the Board and Lorenzo, there is no evidence on the record to support the contention that Defendants sought deconstruction of the ramp.  (*Id.* at 4.)  "In fact, the position of the Board of Adjustment

of the Borough of Tenafly is that the ramp was approved and is a validly existing approval dating back to the original approval for expansion of the home in March of 2008," as supported by the Board's Resolution and the attached plans.  (*Id.*)  Tellingly, the Board and Lorenzo note, the Resolution denying the use of the garage as a cabana does not make any reference to the ramp or removal of same.  (*Id.*)

### 3.   *Analysis*

Having carefully reviewed and considered the legal positions asserted by all parties and the applicable standards of law and case law, the Court finds good cause to grant Defendants' motions for summary judgment.  Initially, the Court finds that this matter is ripe for summary judgment consideration, as there is no genuine issue of material fact, and any disputed facts are immaterial and would not impact how a reasonable jury would decide under governing law.  Even when drawing all reasonable inferences in favor of Plaintiffs, the Court finds that Defendants have satisfied their burden of proof and that granting summary judgment is warranted.

More particularly, the Court holds granting Defendants' motions for summary judgment appropriate under the various preclusion doctrines.  Pursuant to the Full Faith and Credit Statute, this court must consider and accept the rulings of the state courts, which, in the instant matter, include a final judgment that the Board's denial of Plaintiffs' variance application was not arbitrary, capricious or unreasonable, denial of an appeal, and denial of certification before the New Jersey Supreme Court.  *See Dowdell*, 94 F. Supp. 2d at 533.

Based on the facts before this Court, it is clear that a final judgment was entered in favor of the Defendants.  Indeed, the New Jersey Superior Court held a trial to determine whether the Board properly used its discretion in denying the zoning variance, ultimately holding that the Board's actions were not arbitrary, capricious or unreasonable.  The New Jersey Appellate

Division later affirmed that decision, and the Supreme Court of New Jersey denied certification. The judgment entered in the lower court explicitly dismissed the Board "with prejudice." (Order for Judgment.) Accordingly, because the pleadings and complaint in the lower court explicitly included allegations of discriminatory and harassing conduct under both state and federal law and the New Jersey and United States Constitutions (*see* State Compl. ¶¶ 10, 12-13, Wherefore Clause a), the judgment is considered final and on the merits on all asserted claims and allegations. *See Dowdell*, 94 F. Supp. 2d at 533 (citation omitted) (a dismissal with prejudice is considered "an adjudication on the merits as fully and completely as if the order had been entered after a trial.").

Thus, Plaintiffs' federal claims against the Board are precluded, as such claims stem from the Board's denial of Plaintiffs' variance application. *See Sutton*, 71 F. Supp. 2d at 390. Likewise, the claims asserted against Lorenzo are equally precluded, because Lorenzo is certainly in privity with the Board as its Chairman, and he is unquestionably impacted by Plaintiffs' litigation, which makes direct accusations against him in his capacity as the Chairman. While Lorenzo was not individually listed as a party to the state proceedings, he was clearly identified throughout the state pleadings and record, and Plaintiffs were well-aware of Lorenzo's position as Board Chairman at the time their application was denied. Indeed, the allegations against Lorenzo are so closely intertwined with the alleged unlawful actions against the Board that they are in clear privity with one another. Lorenzo certainly had a material interest in the underlying dispute and, as such, Plaintiffs should have joined him in the initial lawsuit, as he could have been affected by the ultimate decision. *See Rhodes*, 980 F. Supp. at 781-82.

Likewise, the Borough and Mottola also are in privity with the Board. Indeed, Mottola was the zoning official who initially denied the Rodsans' zoning variance, and his discretion fell

under the supervisory jurisdiction of the Board.  He is a party to this case in his official capacity.
The Borough was the public employer of Mottola and Lorenzo during the state litigation, and
ultimately has final say or authority over the Board.  Accordingly, Mottola and the Borough are
"close enough" to the Board to warrant their inclusion for preclusion purposes.  *See Zirger*, 144
N.J. at 338 (quoting *Bruszewski*, 181 F.2d at 423).  The allegations against Mottola and the
Borough arise out of the same set of facts and legal issues litigated at the state trial court level.  The
Court is, therefore, satisfied that the parties in this matter were parties in the state action or are
otherwise in privity with the same parties.  Having, therefore, found that Lorenzo, the Borough,
and Mottola are in privity with the Board, because a final judgment on the merits was entered in
favor of the Board, it therefore follows that the final judgment and its implications thereof extend
to the aforementioned parties.

Consequently, based on the privity relationship amongst the Defendants, this Court
disagrees with Plaintiffs' assertion that the dismissal of the Borough and Mottola prior to the trial
in state court requires a finding that the claims against them were not fully adjudicated.  Further,
the Court disagrees that the Borough and Mottola's dismissal was "without prejudice" or otherwise
requires a finding that the merits of the claims asserted against these parties were not adjudicated.
While the Borough and Mottola were dismissed at the commencement of the trial or, perhaps,
even prior to the trial, because claims determined prior to trial are equally barred from being
relitigated, the claims against the aforementioned parties must be precluded.  *See Velasquez*, 123
N.J. 506-07.

Significantly, in describing the underlying action, the Appellate Division noted that the
lower court "dismissed plaintiff's complaint with prejudice and without costs," and did not
characterize the dismissal as distinct between or amongst any of the Defendants.  (*See* N.J. App.

23

Div. Opinion 7.)  The Appellate Divisions' failure to distinguish between the dismissal and whether it impacts each Defendant differently, lends further support to this Court's finding that the state courts considered all claims to have been dismissed and adjudicated on the merits for all Defendants.  (*See id.*)  Further, while true that Plaintiffs drafted and signed a proposed stipulation of dismissal without prejudice, the facts are clear that counsel for the Borough and Mottola did not execute the stipulation, which also was never entered by the state court.  Indeed, the clear evidence of counsel's billing records demonstrates that Defendants never intended to file a stipulation of dismissal without prejudice, due to the implications regarding the New Jersey Torts Claim Act and Plaintiffs' alleged notice deficiencies.  (*See* McClure Cert. ¶¶ 3-4; 5/29/09 Invoice.)

Similarly, the testimony of counsel for Plaintiffs offers further support for this finding, as he testified specifically during the trial that he was dismissing the Borough and Mottola from this matter, without specifying that the dismissal was intended to be without prejudice.  (*See* Piekarsky Cert., Ex. B.)  Based on the aforementioned, good cause exists to find that judgment was entered in favor of all the Defendants.  Affording the judgment full faith and credit, the Court must consider it to be valid, final, and an adjudication on the merits of all claims asserted against the Defendants.  *See Dowdell*, 94 F. Supp. 2d at 533.  Again, as Plaintiffs' Complaint in this matter stems from the underlying state claims that have already been litigated and the allegations of discriminatory and harassing conduct under state and federal law and constitutions, it follows that Plaintiffs' federal claims are barred.

Also, this Court is not persuaded by Plaintiffs' assertion that the state trial court applied the incorrect standard of review, thereby warranting the litigation of Plaintiffs' federal claims.  Indeed, this Court must give full faith and credit to the state court's decisions, which include the

New Jersey Appellate Court's affirmation of the lower court's decision, including the use of the "arbitrary, unreasonable, and capricious standard," and the Supreme Court's denial of certification.   The Court is equally unconvinced by Plaintiffs' contention that although their trial brief failed to address their civil rights and discrimination claims, such a failure does not mean that they were adjudicated and that the dismissal related to such claims.   Again, as previously stated, because the underlying facts and claims were asserted in the pleadings and a judgment was subsequently entered, Plaintiffs are precluded from litigating or relitigating such claims.

Finally, even if assuming *arguendo* that the doctrines of *res judicata*, claim preclusion or issue preclusion do not bar Plaintiffs' federal claims, the entire controversy doctrine certainly precludes same, as its applicability "is left to judicial discretion based on the particular circumstances inherent" in this matter.  *See Rhodes*, 980 F. Supp. at 783 (quotation and citation omitted).   Here, Plaintiffs' have taken their claims and allegations through the entire state court system and continue to seek a favorable judgment regarding the use of their garage as a cabana. However, under the entire controversy doctrine, Plaintiffs had an affirmative duty to bring all relevant and related claims before one court in one litigation, if and when such claims are permitted.  *See Dowdell*, 94 F. Supp. 2d at 534; *Rhodes*, 980 F. Supp. 2d at 781.

In the instant matter, the Court concludes that Plaintiffs unquestionably could and should have raised their federal claims during the state action proceedings.  Indeed, Plaintiffs' federal claims must be precluded, because they arose from "the same overall transaction" between themselves and the Defendants and involve the same operative facts addressed in the state court proceedings, namely, the denial of Plaintiffs' variance application.  *See Dowdell*, 94 F. Supp. 2d at 535.  As discussed above, while perhaps Lorenzo was not officially named in Plaintiffs' state

complaint, because he was the Chief Officer of the Board at the time Plaintiffs' application was denied, Plaintiffs could and should have included him in the underlying proceedings.  *See id.*

Further, Plaintiffs' state complaint specifically alleges discriminatory and harassing conduct on Defendants' part, as well as violations of state and federal laws and the New Jersey and United States Constitutions.  Although the state court's decision that the Board's denial of the zoning variance was proper did not specifically reach the substance of Plaintiffs' federal claims, the fact remains that Plaintiffs were afforded a full and fair opportunity to litigate such claims, but failed to do so.  *See Heir*, 218 F. Supp. 2d at 633.  Further, because Plaintiffs included allegations and claims concerning federal law and the United States Constitution, the federal claims were, in essence, included in Plaintiffs' state complaint and should have been litigated therein.

In fact, the circumstances underlying this matter are quite similar to the *Ward* case, where after an appeal of the denial of an application to construct an office building on plaintiff's property was denied in state court, the federal court precluded plaintiff's claim of deprivation of property rights pursuant to Section 1983, based on the entire controversy and preclusion doctrines.  *See* 531 F. Supp. at 475.  The federal claims asserted in this matter, including those asserted pursuant to Section 1983, are certainly aspects of the "single larger controversy" concerning the use of Plaintiffs' garage as a cabana.  *See Heir*, 218 F. Supp. 2d at 535.  Undeniably, the federal claims before this Court arise from that very same issue regarding Plaintiffs' garage, and, in fact, are premised upon many of the exact factual allegations set forth in the state complaint.  *See id.*  As set forth above, a judgment will foreclose a party from litigating certain claims if it is determined by a reviewing court that, although never in fact litigated, the claims "should have been advanced in an earlier suit."  *See Peduto*, 696 F. Supp. at 1007.

26

Accordingly, the Court finds good cause to apply the entire controversy doctrine, resulting in a finding that Plaintiffs' federal claims must be precluded, because they could and should have been included in the original state action.  Quite simply, the underlying set of facts used to support Plaintiffs' federal claims are the same set of facts used and assessed in the state court proceedings, which ultimately led to a judgment in favor of Defendants.  As such, Plaintiffs' federal claims accrued prior to and during the state court proceedings and must be precluded.  *See Rhodes*, 980 F. Supp. at 787; *Robertson*, 148 F. Supp. 2d at 448.  Indeed, this Court has discretion to preclude claims that a party failed "to allow the trial court the opportunity to supervise[,]" and, thus, Plaintiffs took the risk of losing their right to assert such federal claims by, instead, bringing the claims in this subsequent proceeding.  *See Rhodes*, 980 F. Supp. at 783. Regardless of whether the federal claims may be considered "separate and independently cognizable" claims to those asserted in the state proceedings, Plaintiffs had an affirmative obligation to set forth all causes of action arising from the same set of operative facts in their initial complaint.  *See Dowdell*, 94 F. Supp. 2d at 534.  Plaintiffs failed to meet this obligation and, therefore, their federal claims must be precluded in this subsequent federal proceeding.[2]

While the Court has discretion to refrain from applying the entire controversy doctrine, the Court finds that, in the instant matter, application will not result in a significant unfairness or injustice to Plaintiffs.  *See Rhodes*, 980 F. Supp. at 783.  Instead, because judgment was entered and affirmed in the state court proceedings, which held that the Board did not improperly deny Plaintiffs' zoning variance application, the Court finds Plaintiffs' federal claims are barred.

---

[2] Having concluded that Defendants' motions for summary judgment must be granted based on the relevant preclusion doctrines, the Court need not reach the Board or Lorenzo's assertions with regard to the ramp and Plaintiffs' alleged failure to exhaust their administrative remedies.

Indisputably, Plaintiffs were required to present all affirmative claims to the state court, which arose from the operative facts and entire controversy set forth in their state complaint, but failed to do so. *See id.* Thus, because Plaintiffs "had a fair and reasonable opportunity" to fully litigate their federal claims, pursuant to the entire controversy doctrine, they have lost their right to now assert such claims. *See Heir*, 218 F. Supp. 2d at 633 (citation omitted). Accordingly, this Court must preclude Plaintiffs' federal claims and Complaint. To hold otherwise would be contrary to applicable law, creating piecemeal litigation, and would be unfair, inefficient, and uneconomical to the material interest of Defendants and this Court. *See Dowdell*, 94 F. Supp. 2d at 534.

### B. Plaintiffs' Cross-Motion for Leave to Amend Complaint

#### 1. Relevant Legal Standard

Under the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision as to whether leave to amend a complaint should be granted "is a matter committed to the sound discretion of the district court." *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993). The Third Circuit has adopted a particularly liberal approach in favor of permitting pleading amendments so as to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). Thus, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

However, leave to amend a pleading may be denied if the Court finds: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the non-moving party; or (4) futility of the amendment. *Id.*; *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). With regard to whether a

motion to amend a complaint should be denied on futility grounds, a court must consider whether "the complaint, as amended, would not survive a motion to dismiss for failure to state a claim." *Keller v. Schering-Plough, Corp.*, No. 04-669, 2007 U.S. Dist. LEXIS 75318, at *7 (D.N.J. Oct. 9, 2007) (citing *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002)).  "This does not require the parties to engage in the equivalent of substantive motion practice upon the proposed new claim . . . ; this does require, however, that the newly asserted [claim] appear to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit."  *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990).  Indeed, a complaint must include "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Furthermore, in conducting its futility analysis, the Court must "accept as true all of the factual allegations in the [proposed amended] complaint as well as the reasonable inferences that can be drawn from them."  *Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001) (citing *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993)).

Importantly, prejudice to the non-moving party constitutes "the touchstone for the denial of leave to amend."  *Heyl & Patterson Int'l, Inc. v. F. D. Rich Hous. of V.I., Inc.*, 663 F.2d 419, 425 (3d Cir. 1981) (quoting *Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).  The burden of establishing prejudice rests with the non-moving party, who must demonstrate that permitting the party to amend the complaint "would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction."  *Textron Fin.-N.J., Inc. v. Herring*

*Land Grp., LLC*, No. 06-2585, 2009 WL 690933, at *4 (D.N.J. Mar. 11, 2009). "Delay alone . . .

does not justify denying a motion to amend.  Rather, it is only where delay becomes 'undue,

placing an unwarranted burden on the court, or . . . prejudicial, placing an unfair burden on the

opposing party' that denial of a motion to amend is appropriate."  *Id.* (quoting *Adams v. Gould*

*Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)).  If, however, the non-movant is not afforded "a

meaningful opportunity to respond to these new allegations," permitting the movant to amend the

complaint may be inappropriate.  *See Keller*, 2007 U.S. Dist. LEXIS 75318, at **8-9 (denying a

motion to amend the complaint because discovery would have to be reopened in order to provide

the defendant with such an opportunity).

## 2.   *Parties' Legal Arguments*

Here, Plaintiffs assert that good cause exists to grant their motion to file an amended

Complaint to add a selective enforcement claim against Defendants.  (*See generally* Pls.' Moving

Br.)  Plaintiffs assert that the prior property owner used the garage in dispute as an accessory

structure at the time that Plaintiffs purchased the property over twenty years ago.  (*Id.* at 2.)

After approving Plaintiffs' request to build an elevator for their son, as well as a third story to

their house, and "after twenty (20) years of silence, the town zoning official and the Town

disapproved of Plaintiffs' use of the garage," denying Plaintiffs' application for a variance.  (*Id.*)

Plaintiffs assert that the amended Complaint must be permitted, as it will not cause undue

delay, the motion was not filed in bad faith and Plaintiffs' motives are not dilatory.  (*Id.* at 4-5. )

Plaintiffs contend that they only recently became aware of Defendants' selective enforcement

and, as such, the motion was not filed to cause undue delay or with bad faith.  (*Id.* at 4.)  Further,

because Plaintiffs claim they have evidence to support their claims, the cross-motion was not

filed with any dilatory motives.  (*Id.* at 5.)  Similarly, Plaintiffs argue that Defendants will not be

prejudiced by the proposed amended Complaint, because new parties are not being added to this matter, discovery has not commenced in this federal action, and the proposed claim is substantially similar to the discrimination previously asserted.  (*Id.*)

Specifically, Plaintiffs learned of Defendants' selective enforcement of the Borough's zoning ordinances in the fall of 2010, discovering that the Board granted two variances to a resident that permitted the construction of a pool cabana just a few months prior to denying Plaintiffs' application.  (Doc. No. 34-2 ("Hart Cert."), Ex. C1 ("Rodsan Cert.") ¶¶  8-10.) Similarly, although other neighbors frequently park their over-sized vehicles on the street or their lawns, Plaintiffs contend that Defendants instructed Plaintiffs to park the cars in their garage, because their cars were too big.  (Rodsan Cert. ¶ 11.)  Plaintiffs argue that yet another example of selective enforcement occurred when neighbors added a large addition to their home and neither Plaintiffs nor their other neighbors were notified of the addition and no variances were obtained, as otherwise required by the Borough's zoning ordinance.  (*Id.* at ¶¶ 12-13.)  According to Plaintiffs, the same neighbors failed to build a fence, as otherwise required, and construction work was allowed to proceed during non-permitted hours and holidays, in direct contravention of the Borough's zoning provisions.  (*Id.*)  Yet, Plaintiffs assert, when working on a smaller addition to their home, Defendants strictly enforced the safety precautions and construction work hours required by the Borough's zoning ordinance.  (*Id.* at ¶ 14.)  Plaintiffs further note that at least one other local business owner has accused Defendants of selective enforcement, as evidenced by a November 18, 2010 article posted on NorthJersey.com.  (*Id.* at ¶ 15, Ex. C.)  Plaintiffs, therefore, conclude that "Defendants clearly favor some residents and businesses of the town and disfavor others, based on nothing else but discrimination and biases."  (*Id.* at ¶ 16.)

Finally, Plaintiffs argue that the proposed amendments are not futile, reminding the Court it must accept all of their factual allegations as true, drawing all reasonable inferences in their favor.  (*Id.* at 5-6.)  As for the entire controversy doctrine, Plaintiffs assert that because they only "recently learned and obtained conclusive proof about Defendants' selective enforcement of the zoning ordinances through the town of Tenafly. . . . [and] did not have the benefit of that knowledge at the time of the hearing," it is inapplicable.  (Pls.' Opp'n Br. 7.)  Since Plaintiffs' cross-motion to amend was timely filed, and the "new information goes to the heart of all of Plaintiffs' claims[,] as well as establishes its own claim," Plaintiffs argue that the selective enforcement and civil rights claims are not barred.  (*Id.*)  In support of this assertion, Plaintiffs conclude that "no claims of any kind were fully litigated against Tenafly or Mottola . . . . [or] against Defendant Benny Lorenzo."  (*Id.*)

The Board and Lorenzo, on the other hand, assert that the Plaintiffs exercised undue delay and bad faith in filing their motion, the amendment would be futile, and the amendment will prejudice Defendants.  (*See generally* Bd.'s Opp'n Br.)  Specifically, the Board and Lorenzo assert that permitting the proposed amended Complaint will result in undue delay, since this matter has been adjudicated throughout the entire New Jersey state court system.  (*Id.* at 2.)  Further, as Plaintiffs waited until the filing of summary judgment motions to request leave to add the selective enforcement claim, the Board and Lorenzo suggest that the application was made in bad faith with dilatory motive, in order to increase the costs and expenses that will be borne by Defendants if the proposed amended Complaint is permitted.  (*Id.* at 3.)  According to the Board and Lorenzo, the application is a delay tactic and "Plaintiffs' true purpose in this action is the obtaining of the right to have a cabana on the outside of their home[,]" and to otherwise obtain a judgment that they were unable to obtain from the New Jersey courts.  (*Id.*)

Next, the Board and Lorenzo contend that the proposed amendments to add the selective enforcement claims would be futile, because it is not based on a federal cause of action or federally-protected right.  (*Id.*)  According to the aforementioned parties, Plaintiffs are simply seeking "to have a cabana for social use[,]" and, because Plaintiffs fail to base the proposed claim on a federally-protected right, such a claim would be futile.  (*Id.* at 3-4, citing *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 158 (3d Cir. 2002) (indicating that an action must be based on a federally-protected right in order to be permitted in a federal court proceeding).)  Likewise, the Board and Lorenzo argue, permitting the proposed amendments will cause prejudice to the Board, Borough and Lorenzo, because they have already litigated this matter in the state courts, particularly when Plaintiffs have had previous opportunities to litigate a selective enforcement claim.  (*Id.* at 4-5.)  As "[a]ll of the facts were known to it [sic] and this is merely an attempt to prolong this action[,] which will result in prejudicial costs to Defendants . . . . [,]" the Board and Lorenzo assert that this Court should deny Plaintiffs' cross-motion.  (*Id.* at 5.)

With regard to the few examples the Plaintiffs assert support a selective enforcement claim, the Board and Lorenzo take the position that they do not form the basis for such a claim.  (Bd.'s Reply Br. 6.)  Specifically, the aforementioned parties explain that just because a cabana application was approved months prior to Plaintiffs' application does not indicate that Defendants' actions were discriminatory or based on selective enforcement.  (*Id.* at 6-7, citing *Tancrel*, 583 F. Supp. at 1551 (where plaintiffs asserted that their discriminatory enforcement claim was not raised in the lower court, holding that "any further claims arising out of the same factual transactions that were litigated between the parties in the first action" are barred).)

In reply to the Board and Lorenzo's opposition, Plaintiffs assert that Defendants will not suffer prejudice as a result of the proposed amended Complaint, the application was not made in

bad faith or with dilatory motive, and the proposed selective enforcement claim is not futile. (Doc. No. 39 ("Pls.' Reply Br.") 1.)  Plaintiffs disagree with the Board and Lorenzo's assertion that the motion is a "'knee-jerk' reaction" to Defendants' summary judgment motions, as Plaintiffs only learned about Defendants' selective enforcement after filing the Complaint in federal court.  (*Id.* at 1-2.)  As Plaintiffs initially believed that a settlement would be forthcoming, in order to avoid unnecessary costs and expenses, Plaintiffs did not move to amend the Complaint until settlement discussions proved fruitless.  (*Id.* at 2.)  Next, Plaintiffs argue that selective enforcement is a federally-protected right, as it violates federal due process rights.  (*Id.*)  Finally, Plaintiffs assert that the Defendants will not suffer any prejudice, because the selective enforcement claim is similar to their other claims and "fall under the umbrella of Defendants' discriminatory actions."  (*Id.*)  As discovery in this action has not occurred, Plaintiffs contend, no party will be prejudiced.  (*Id.*)

        *3.*      <u>**Analysis**</u>

Having carefully reviewed and considered the parties' legal positions, this Court finds good cause to deny Plaintiffs' motion to file an amended Complaint.  Although the Court does not find bad faith or dilatory motive on Plaintiffs' part in filing their cross-motion, the Court does find futility of the proposed claim of selective enforcement.   Again, based on the preclusion doctrines and entire controversy doctrine discussed and analyzed throughout this Opinion, the Court finds that permitting the addition of the selective enforcement claim would be futile, because the aforementioned doctrines bar Plaintiffs from asserting such a claim, which could have and should have been brought in the state action.  *See Tancrel*, 583 F. Supp. at 1551; *Peduto*, 696 F. Supp. at 1007.  Plaintiffs' concession that the selective enforcement claim is similar to their other claims and "fall under the umbrella of Defendants' discriminatory actions,"

provides this Court with even more reason and support to deny the cross-motion to file an amended Complaint.  For instance, Plaintiffs' complaint in the state court action specifically alleged that Defendants "cited Plaintiffs for numerous alleged violations as part of a plan and scheme to harass and discriminate against the Plaintiffs. . . . [and] engaged in a course of deliberate, harassing and discriminatory conduct against the Plaintiffs."  (State Compl. ¶¶ 10, 12.)  Certainly, the aforementioned allegations are interrelated and intertwined with Plaintiffs' proposed selective enforcement claim as to warrant this Court's finding that the claim could and should have been incorporated in the state proceedings.

Further, although Plaintiffs assert that they only recently learned of the selective enforcement of the Borough's zoning ordinance, they failed to provide an adequate excuse for their neglect to discover same in a timely manner.  *See Romero v. Allstate Corp.*, 404 F.3d 212, 222 (3d Cir. 2005) ("a claim will accrue when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.").  Plaintiffs, in fact, concede that the approval of another resident's application for a variance for a cabana occurred a few months prior to the denial of Plaintiffs' application.  Thus, the Court finds that Plaintiffs certainly could have undertaken diligent research efforts through public records or otherwise to assess whether the zoning ordinance was being selectively enforced against them.  The fact that Plaintiffs eventually obtained the public minutes for the Board meeting on July 7, 2008, approved on August 8, 2008, in which the resident's application for a variance to construct a cabana was granted, further supports this finding.  (*See* Rodsan Cert. Ex. A.)

Finally, the lack of any logical or coherent nexus between the facts of this matter when compared to the article referred to by Plaintiffs, in which a business owner complains of selective enforcement with respect to issuing summonses to businesses, further persuade this

35

Court that denial of Plaintiffs' cross-motion is warranted.  The comparison is too dissimilar to carry much weight when balancing the futility of the proposed amendment and prejudice to Defendants.  Clearly, the proposed amended Complaint would prejudice Defendants to an extent that warrants denial of Plaintiffs' cross-motion, as it would require Defendants to litigate claims that should have been included in the state proceedings and are, therefore, barred under the preclusion and entire controversy doctrines.  Accordingly, the Court finds that good cause exists to deny Plaintiffs' cross-motion to file an amended Complaint.

## III.   **CONCLUSION**

For the foregoing reasons, and for other good cause shown, Defendants' motions for summary judgment are granted.  Pursuant to Federal Rule of Civil Procedure 56, the Court is satisfied that no genuine issue of material fact for trial is present, and that Defendants are entitled to summary judgment as a matter of law on Counts one through eight of the Complaint.

Plaintiffs' cross-motion for leave to file an amended Complaint is denied.  An appropriate form of order will be filed together with this Opinion.


 s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES MAGISTRATE JUDGE**

Dated: June 30, 2011